# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Gary Lynn Underdahl,

        Petitioner,

vs.

State of Minnesota,

        Respondent.        Civ. No. 09-1843 (PAM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, which challenges a State Court conviction. See, Title 28 U.S.C. §2254.

The Petitioner Gary Lynn Underdahl ("Underdahl") appears pro se, and the Respondent appears by Scott A. Buhler, Assistant Polk County Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

## II.  Factual and Procedural Background.

Underdahl is currently a Minnesota State Prisoner.  When he filed his Habeas Corpus Petition, he was incarcerated at the Prairie Correctional Facility, in Appleton, Minnesota, and he is currently housed at the Moose Lake Correctional Facility, in Moose Lake, Minnesota.  See, Notice of Change of Address, Docket No. 15; Petition, Docket No. 1, at p. 1.  On October 23, 2006, after a Jury Trial, Underdahl was convicted of two (2) Counts of being a Felon in Possession of a Firearm, in violation of Minnesota Statutes Section 624.713, Subdivisions 1(b), and 2(b), and Section 609.11, Subdivision 5(b).  However, he was sentenced only for the violation of Section 624.713.  See, Register of Actions, Answer, Docket No. 7, Exhibit 6 at pp. 51-52 of 60.  Underdahl brings this Habeas Corpus Petition seeking relief from the allegedly improper Trial.

Prior to Trial, Underdahl was appointed a Public Defender, Cory Harbot ("Harbot"), whom he fired before the Trial commenced, and proceeded pro se on a pretrial Motion.  Later, he had Harbot reappointed, he discharged Harbot a second time, and then retained a private attorney, Thomas Omdahl ("Omdahl").  See, Brief in Support of Petition, Docket No. 2, at pp. 6-7 of 94.  Omdahl represented Underdahl at the Trial, and at the Sentencing Hearing, but did not represent Underdahl on the

post-Trial Motion for a New Trial, which Underdahl filed <u>pro</u> <u>se</u> while still represented by Omdahl. See, <u>Order, File No. 60-CR-06-5343, Answer, Docket No. 7, Exhibit 3</u>, at p. 31 of 60. While he was represented, Underdahl submitted another self-created Motion, in order to suppress evidence, and to dismiss the Complaint, and the aggravating sentencing factors. <u>Register of Actions</u>, supra at pp. 59-60 of 60.

Upon Underdahl's temporary waiver of his right to counsel, the Trial Court considered his Motion to Dismiss the Complaint, and the aggravating sentencing factors, and denied the Motion. See, <u>Order Denying Defendant's Motion, File No. 60-CR-06-5343, Answer, Docket No. 7, Exhibit 5</u>, at p. 37 of 60. As noted, after the Trial, Underdahl filed a <u>pro</u> <u>se</u> Motion for New Trial, which the Court took under advisement after sentencing. See, <u>Order Denying Defendant's Motion for New Trial, File No. 60-CR-06-5343, Answer, Docket No. 7, Exhibit 2</u>, at p. 21 of 60.

The Trial Court denied Underdahl's Motion for a New Trial, and Underdahl appealed that decision to the Minnesota Court of Appeals, arguing that the Trial Court erred in allowing a unitary Trial -- wherein the guilt and penalty phase were tried together; in improperly admitting evidence to which he had not objected, which was related to his prior felony conviction and his recent release from prison; and in denying his Motion to Appoint Counsel for the Hearing on the Motion for New Trial.

See, State v. Underdahl, 2008 WL 2965324 at *1 (Minn.App., August 5, 2008).

Underdahl also submitted a pro se brief to the Court of Appeals, in which he argued

that the evidence was insufficient to convict him, among other matters. Id. at *13.

The facts which underlie Underdahl's current Habeas Petition were recently

summarized by the Minnesota Court of Appeals as follows:

> After his release from prison, Underdahl moved in with his
> mother, whose residence had been inspected by Department
> of Corrections agents and determined to be clear of
> firearms. Shortly thereafter, S.T., a long-time casual
> acquaintance, approached Underdahl to discuss animal
> trapping. According to S.T.'s testimony, Underdahl asked
> whether S.T. was interested in purchasing traps or guns that
> belonged to Underdahl's brother. After expressing his
> interest to Underdahl, S.T. reported the conversation to the
> Polk County Sheriff's Department and subsequently
> volunteered to work as a confidential informant.
>
> Sometime during the next two weeks, Underdahl
> discovered a rusty but operable .22 caliber pistol while
> moving items out of a shed on his mother's property.
> Helping Underdahl were R.B. and J.A., who was on
> probation after being convicted of burglary. Based on this
> conviction, J.A. also was prohibited from possessing
> firearms. According to J.A.'s testimony, Underdahl picked
> up the pistol, placed it in a plastic bag, and directed J.A. to
> hide the pistol in a ditch near a particular road sign near
> Underdahl's mother's property. J.A. complied with
> Underdahl's request. J.A. also testified that Underdahl
> directed him to refrain from discussing the pistol with
> anyone else. But J.A. reported the incident to his probation

officer.

On April 26, 2006, S.T. met Underdahl to conduct a controlled buy. Shortly after S.T. arrived at Underdahl's property, Underdahl indicated that he had a .22 pistol available for sale and drew a map depicting its location. * * * Underdahl and S.T. agreed that S.T. would find the pistol, determine its worth, rehide it, and quote Underdahl a price on his return. After some initial confusion, S.T. found the pistol in the location where Underdahl had directed J.A. to hide it. After a brief negotiation, Underdahl and S.T. agreed on a price for the pistol, which S.T. paid using prerecorded currency. Underdahl subsequently was arrested on May 2, 2006.

While in custody and after being advised on his constitutional rights, Underdahl was interviewed two times by law enforcement officers. During the first interview, an officer asked Underdahl whether he had sold anything. Underdahl replied that he had sold some [animal] traps but denied having sold anything else. He also denied having been involved with any firearms since his release from prison. During the second interview, however, Underdahl acknowledged that the pistol had been found while moving items out of the shed but denied that he ever touched it. He claimed that he told J.A., "You got to get this out of here. I'm a convicted felon."

Id. at *1-2.

In his direct appeal to the Minnesota Court of Appeals, Underdahl argued that the

Trial Court had erroneously applied Minnesota Statute Section 244.10, Subdivision

5, instead of Rule 11.04, Minnesota Rules of Criminal Procedure, in its decision to

allow for a unitary trial.  Id. at *7-8; Brief in Support of Appeal, Docket No. 10, at pp. 49-54 of 104.  The Minnesota Court of Appeals found that the Trial Court's ruling on that issue was not an abuse of discretion, based upon its conclusion that the Trial Court had applied the correct Statute, and that the evidence relevant to the sentencing phase was not inadmissible in the guilt phase, as it was not hearsay, was relevant, and was not unfairly prejudicial.  Id. at *10-11.

Underdahl also challenged the admission of evidence of his prior felony at the Trial.  Prior to the Trial, Underdahl and the prosecution stipulated that Underdahl was a convicted felon; however, at Trial, the prosecution introduced evidence that Underdahl had been convicted of a violent felony, and that he had been recently released from prison.  Id.  In addition, S.T. testified that he had decided to assist the police because he believed that the community was afraid of Underdahl.  Id.  Since Underdahl had not objected to any of that evidence or testimony at Trial, the Court of Appeals reviewed the admission of the evidence for "plain error," in order to determine whether Underdahl's substantial rights had been affected.  Id. at *11; Rule 31.02, Minnesota Rules of Criminal Procedure.  The Court of Appeals upheld the admission of the evidence, based upon its determination that Underdahl had not been unfairly prejudiced, as his recent release from prison had been central to his defense,

and because S.T.'s testimony, as to Underdahl's state of mind, was not hearsay. Id..
Stated otherwise, the Court of Appeals determined that the evidence was not
inadmissible.

Underdahl also challenged the Trial Court's denial of his request to appoint
counsel for his post-Trial Motion, in violation of his Sixth Amendment right to
counsel. Id. at *12. The Court of Appeals concluded that the Trial Court did not err
when it decided that Underdahl had waived his right to counsel, as to his post-Trial
Motion, when he had been informed by the Court that it was unlikely that the Public
Defender's Office would agree to represent him; when, thereafter, Underdahl delayed
his search for counsel; and when he attempted to use his lack of counsel in order to
delay the proceedings on his Motion for a New Trial. Id. at *12.

The Minnesota Court of Appeals also considered the Plaintiff's self-created
supplemental appeal brief, which he submitted in addition to the appeal brief prepared
by his counsel, and in which he challenged the sufficiency of the evidence at Trial,
among other alleged errors. Id. at *13. The Court determined that, even though
Underdahl contended that the prosecution's witnesses were not truthful, credibility
determinations were the province of the Jury, and that the testimony and evidence
were sufficient to support the Jury's Verdict. Id. The Court of Appeals noted that

Underdahl's pro se brief raised several other issues that the Court deemed waived, based upon Minnesota law, because the "allegations of error [were] not supported by any legal argument or citation to legal authority." Id. at *13 n. 7.[1]

Underdahl appealed the Minnesota Court of Appeals' decision to the Minnesota Supreme Court. In his brief to the Minnesota Supreme Court, Underdahl argued that the unitary Trial was in error, apparently due to the prejudicial effect of the sentencing-phase evidence; that Underdahl was entitled to a new Trial because of the "inadmissible and inflammatory evidence" admitted; that the prosecutor had committed misconduct, and had improperly attempted to bias the Trial Court;[2] and that Underdahl had been deprived of his constitutional right to counsel for his post-Trial Motion. See, Petition for Review, Docket No. 12, at pp. 1-9 of 66. Underdahl again submitted a pro se brief, which is nearly identical to his brief to the Minnesota Court of Appeals. See, Pro Se Supplemental Brief to Minnesota Supreme Court, Docket No.

---

[1]While the Minnesota Court of Appeals upheld Underdahl's conviction, the Court reversed, and remanded, the upward-departure sentence, which it found was based upon improper aggravating factors. See, State v. Underdahl, 2008 WL 2965324 at *2-7 (Minn.App., August 5, 2008).

[2]Since the Minnesota Court of Appeals reversed the sentence, it did not address the alleged prosecutorial misconduct, with respect to the alleged attempts to bias the Trial Court. See, State v. Underdahl, supra at *7 n. 5.

<u>13</u>, at pp. 3-29 of 41.  The Minnesota Supreme Court denied review on September 9, 2008.  See, <u>Order, Docket No. 13</u>, at p. 41 of 41.  Underdahl did not take an appeal to the United States Supreme Court, and did not seek collateral review from the State Courts.  See, <u>Petition</u>, supra at pp. 3-4 of 6.

On July 15, 2009, Underdahl then filed a Petition for Writ of Habeas Corpus, under Title 28 U.S.C. §2254, in which he asserts eight (8) grounds for relief.  First, Underdahl contends that the Trial Court allowed inadmissible evidence; second, he contends that the Trial Court erred in allowing a unitary Trial; third, Underdahl alleges prosecutorial misconduct; fourth, he contends that his Sixth Amendment right to counsel as to the post-Trial Motion was violated; fifth, Underdahl alleges that the prosecutor withheld exculpatory evidence; sixth, he contends that his Sixth Amendment right to counsel, during Trial, was violated by ineffective assistance of counsel; seventh, he contends that his Due Process rights were violated by the admission of the gun evidence; and eighth, Underdahl asserts that there was insufficient evidence to convict him of being a Felon in Possession of a Firearm.  See, <u>Petition</u>, supra at pp. 5-6 of 6.  The Respondent opposes the Petition, asserting that Underdahl has failed to fairly present his Federal claims in the State Courts, and that his claims are otherwise without merit.  See, <u>Answer, Docket No. 7</u>; <u>Memorandum of</u>

Law in Support of Answer, Docket No. 8.

## III. Discussion

A.  Standard of Review.  "[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Title 28 U.S.C. §2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  As a result, before a Writ may issue, a petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.  Id.; see also, Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004), cert. denied, 543 U.S. 979 (2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court.  See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision.").

A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two (2) separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts. See, Williams v. Taylor, 529 U.S. 362 (2000). The Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also, Underdahl v. Carlson, 462 F.3d 796, 798 (8th Cir. 2006), cert. denied, 549 U.S. 1345 (2007); Davis v. Norris, 423 F.3d 868, 874-75 (8th Cir. 2005); LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Davis v. Norris, supra at 875; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams v. Taylor, supra, on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously

been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations. See, e.g., Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed). Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable. "'[O]bjectively unreasonable' does not mean 'clear error,' because '[t]hese two standards * * * are not the same,'" and "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." LaFrank v. Rowley, supra at 689, quoting Lockyer v. Andrade, supra at 75.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations rendered by a State Tribunal, which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. See, Guinn v. Kemna, 489 F.3d 351, 359 (8th Cir. 2007), cert. denied, --- U.S. ----, 128 S.Ct. 1716 (2008); Lupien v. Clarke, supra at 618; Green v. Norris, 394 F.3d 1027,

1029 (8th Cir. 2005).  Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>Kinder v. Bowersox</u>, 272 F.3d 532, 538 (8th Cir. 2001); <u>McDonald v. Bowersox</u>, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997).  Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" <u>Kinder v. Bowersox</u>, supra at 538, citing <u>Title 28 U.S.C. §2254(e)(1)</u>.

Finally, it is well-established that a Federal Court will not entertain a Petition for a Writ of Habeas Corpus on behalf of a person in State custody unless the petitioner has first exhausted all available State Court remedies.  See, <u>Title 28 U.S.C. §2254(b)</u>; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982); see also, <u>Armstrong v. State of Iowa</u>, 418 F.3d 924, 925-26 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006)("Federal habeas relief is available to a petitioner after he 'has exhausted the remedies available in the courts of the State.'"), quoting <u>Title 18 U.S.C. §2254(b)(1)(A)</u>.  The exhaustion of State remedies

requirement is based on principles of comity and federalism, as its purpose is to ensure that State Courts are given the first opportunity to correct alleged Federal constitutional errors raised by State prisoners. See, O'Sullivan v. Boerckel, supra at 844; Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Rose v. Lundy, supra at 518-19; Curtiss v. Mount Pleasant Correctional Facility, 338 F.3d 851, 855 (8th Cir. 2003), cert. denied, 540 U.S. 1060 (2003)("The exhaustion requirement serves AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'"), quoting Carey v. Saffold, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a petitioner must fairly present his constitutional claims to the highest available State Court before seeking relief in Federal Court. See, O'Sullivan v. Boerckel, supra at 844; Duncan v. Henry, supra at 365-66; see also, Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court."). The exhaustion of State remedies requires more than the fact that the Federal Habeas applicant has been through the State Courts. See, Picard v. Connor, 404 U.S. 270, 275-76 (1971).

To serve the purposes of exhaustion, the State Courts must have the first opportunity to hear the claim, which is sought to be vindicated in a Federal Habeas proceeding. Id. The State Courts have an opportunity to hear a claim, when the claim has been fairly presented, by reference to a specific Federal constitutional right, a Federal case, or a State case, which raises a pertinent Federal constitutional issue. See, Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005), cert. denied, 546 U.S. 844 (2005), quoting Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir. 1999), cert. denied, 528 U.S. 846 (1999); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996). Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts. Id. "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." Id.; see also, Abdullah v. Groose, supra at 412, citing Duncan v. Henry, supra at 366.

Under Minnesota law, "[o]nce a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief." Zenanko v. State, 587 N.W.2d 642, 644 (Minn. 1998), quoting State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). If the petitioner has failed to exhaust his State Court remedies, and if the Court to which

he should have presented his claim would now find it procedurally barred, the claim is procedurally defaulted. See, <u>Sloan v. Delo</u>, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996), citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991). In addition, if a petitioner has attempted to raise a claim in State Court, but the State Court determines that the petitioner has defaulted the claim under a State procedural rule, Federal Courts will not, as a general proposition, consider the claim on Habeas review. See, <u>Coleman v. Thompson</u>, supra at 750; <u>Sloan v. Delo</u>, supra at 1378.

Although the State Court procedural bar is "nearly absolute," a petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence. <u>Reagan v. Norris</u>, 279 F.3d 651, 656 (8th Cir. 2002), quoting <u>Coleman v. Thompson</u>, supra at 750. If a petitioner cannot provide cause and prejudice for his default, in the absence of a claim of actual innocence, a Federal District Court can "properly dismiss[] [the petitioner's] federal claims **with** prejudice." <u>Armstrong v. State of Iowa</u>, supra at 927 [emphasis in original].

Finally, a Petition that contains both exhausted and unexhausted claims for relief -- a "mixed" Petition -- must be dismissed in its entirety. See, <u>Rose v. Lundy</u>,

supra at 522; <u>Clay v. Norris</u>, 485 F.3d 1037, 1039 (8th Cir. 2007)("[A] state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.")[internal quotations omitted]; <u>Hamilton v. Roehrich</u>, 628 F. Supp.2d 1033, 1046 (D. Minn. 2009)("[A] Habeas Petitioner must exhaust his State Court remedies with respect to **all** of the claims that he wishes to raise in a Federal Habeas Petition.")[emphasis in original].

    B.  <u>Legal Analysis</u>.

        1.    <u>The Request to Appoint Counsel for the Habeas Proceedings</u>.  As a preliminary matter, Underdahl has requested that the Court appoint counsel for this Habeas Corpus proceeding.  See, <u>Brief in Support of Petition</u>, supra at p. 7 of 94.  We recommend denial of the Motion to Appoint Counsel.

    It is well-established that indigent litigants do not have a constitutional or statutory right to counsel in civil cases, including Habeas Corpus proceedings.  See, <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 556 (1987).  Rather, the appointment of counsel in such cases is a matter committed to the discretion of the trial court.  See, <u>McCall v. Benson</u>, supra at 756; <u>Mosby v. Mabry</u>, 697 F.2d 213, 214 (8th Cir. 1982).  Central to the exercise of such discretion is a determination by the Court "that the Petitioner as well as the court will benefit from the assistance of counsel."  <u>Nelson v. Redfield</u>

Lithograph Printing, 728 F.2d 1003, 1005 (8th Cir. 1984); see also, Plummer v. Grimes, 87 F.3d 1032, 1033 (8th Cir. 1996)("A district court is to decide whether the plaintiff and the court will substantially benefit from the appointment of counsel * * *.").

In exercising its discretionary authority, the Court must carefully weigh the factual and legal complexities of the case, the capability of the Petitioner to investigate the facts and to present his claims, and the existence of conflicting evidence. See, McCall v. Benson, supra; Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996); Plummer v. Grimes, supra; Swope v. Cameron, 73 F.3d 850, 852 (8th Cir. 1996); Nachtigall v. Class, 48 F.3d 1076, 1081-82 (8th Cir. 1995).

After reviewing the pertinent factors, we find the issues presented in this action to be uncomplicated both in their legal and factual components. Although there may be conflicting evidentiary contentions, their full exploration before the Court will not require the skillful and practiced questioning techniques associated with representation by legal counsel. Undoubtedly, Underdahl's lack of legal knowledge will present some disadvantages, in terms of the requisite time and effort that may be attendant to the presentation of his claims, however, we are satisfied, based upon our review of his submissions to the Court thus far, that Underdahl possesses the capacity,

and resources to develop and articulate the grievances which are presented by his Petition. On the Record presented, we are unable to find that Underdahl has justified his request for counsel, and accordingly, we deny Underdahl's Motion to Appoint Counsel, and we proceed to the merits of his Petition.

            2.      <u>The Petition for Habeas Corpus Relief</u>. In his Petition, Underdahl lists eight (8) grounds for Habeas Corpus relief. See, <u>Petition</u>, supra at pp. 5-6 of 6. Several of those grounds were raised by Underdahl's counsel in the appeals to the Minnesota State Court of Appeals, and later, to the Minnesota Supreme Court. The remaining grounds were raised by Underdahl <u>pro se</u>, in supplemental briefs that he submitted to the State Courts. While the Minnesota Court of Appeals considered -- and rejected -- Underdahl's <u>pro se</u> argument with respect to the sufficiency of the evidence, the Court did not consider the remaining arguments in the <u>pro se</u> brief, finding them to having been waived because Underdahl had failed to cite legal authority, or make a legal argument, pursuant to <u>State v. Krosch</u>, 642 N.W.2d 713, 719 (Minn. 2002), citing <u>State v. Ture</u>, 632 N.W.2d 621, 632 (Minn. 2001); <u>McKenzie v. State</u>, 583 N.W.2d 744, 746 n. 1 (Minn. 1998), and quoting <u>Louden v. Louden</u>, 22 N.W.2d 164, 166 (Minn. 1946)("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will

not be considered on appeal unless prejudicial error is obvious on mere inspection.").

As a consequence, we find that Underdahl's claims, which are related to the asserted withholding of exculpatory evidence (Ground Five); the failure to rule on his <u>pro se</u> suppression Motion (Ground Seven); and the assertedly inadequate assistance of his Trial Counsel -- who did not represent Underdahl during his appeals (Ground Six) -- have been procedurally defaulted, by application of a State procedural rule which is regularly applied, and firmly established, in the Minnesota Courts. See, <u>Barnett v. Roper</u>, 541 F.3d 804, 808 (8th Cir. 2008)("A state procedural rule is adequate only if it is a 'firmly established and regularly followed state practice," and it must "further[] a legitimate state interest."), cert. denied, --- U.S. ---, 130 S.Ct. 63 (2009).[3]

As noted, a claim that has been procedurally defaulted in the State Courts will not be entertained in a Federal Habeas proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, that there

---

[3]A mere glance at the case history of <u>State v. Krosch</u>, 642 N.W.2d 713 (Minn. 2002), reveals that it has been cited no fewer than fifty-four (54) times in Minnesota Courts, and once in Federal Court, for its holding on the waiver of arguments which are not supported by legal authority. See, <u>Balderas v. Minnesota</u>, 2008 WL 495535 at *7 (D. Minn., February 20, 2008) Plainly, the rule is applied consistently, and is firmly established in Minnesota Courts. <u>Id.</u> at *8 ("The Minnesota [procedural waiver rule] has been established and followed since at least 1946.").

would be a "fundamental miscarriage of justice" if the Federal Court declined to consider that claim. See, <u>Coleman v. Thompson</u>, supra at 750. "It is well-established that federal courts will not address procedurally defaulted claims on the merits unless a petitioner can show either cause and prejudice to excuse the default or actual innocence." <u>Wickner v. Fabian</u>, 2007 WL 1201621 at *8 (D. Minn., April 20, 2007), quoting <u>Schliemann v. Fabian</u>, 2007 WL 495007 at *3 (D. Minn., February 13, 2007), citing, in turn, <u>Clemons v. Leubbers</u>, 381 F.3d 744, 750 (8th Cir. 2004), cert. denied, 546 U.S. 828 (2004); <u>Reagan v. Norris</u>, supra at 656; <u>Carney v. Fabian</u>, 441 F. Supp. 2d 1014, 1023 (D. Minn. 2006), citing <u>Coleman v. Thompson</u>, supra at 750. The "fundamental miscarriage of justice" exception is available only upon a "showing, based on **new evidence**, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995)[emphasis added], cert. denied, 516 U.S. 1161 (1996), quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).

Here, the Minnesota Court of Appeals found that Underdahl had waived certain of his claims by failing to make any legal arguments, or to cite to legal authority, and Underdahl has not presented any reason why he could not have done so. Indeed, "it is hard to imagine an external impediment that would have prevented him from

explaining the basis for his claims," Balderas v. Minnesota, 2008 WL 495535 at *8

(D. Minn., February 20, 2008), particularly where Underdahl had the benefit of

counsel at the time that he submitted his pro se brief.[4]  Furthermore, for reasons we

explain in our evaluation of Ground Eight, based upon Underdahl's argument that

there was insufficient evidence to convict him, we find that he has failed to

demonstrate "actual innocence," such that our refusal to consider his defaulted claims

would result in manifest injustice.   Accordingly, we recommend the denial of

Underdahl's Habeas Corpus Petition, on Grounds Five, Six, and Seven, as

procedurally defaulted.

Since they involve somewhat different issues, we address the remaining

Grounds separately:

        a.     Ground One: Inadmissible Evidence.  Underdahl contends

---

[4]Since Underdahl has plainly failed to satisfy the cause requirement, it is unnecessary to consider the prejudice component.  See, Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007)("If a prisoner fails to demonstrate cause, the court need not address prejudice."), citing Mathenia v. Delo, 99 F.3d 1476, 1481 (8th Cir. 1996), cert. denied, 521 U.S. 1123 (1997); Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998) (when a Habeas petitioner "has not shown adequate cause to overcome the procedural bar * * * we need not consider the issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998)(same).  Nevertheless, we find no reason to believe that Underdahl could satisfy the prejudice requirement, so as to excuse his defaulted claims.

that the Trial Court permitted inadmissible, and unfairly prejudicial, evidence at Trial, but he does not identify a Federal right that the admission of the allegedly improper evidence violates. In his appeals to the Minnesota Court of Appeals, and to the Minnesota Supreme Court, Underdahl argued that the evidence was unfairly prejudicial, under the Minnesota Rules of Evidence. See, <u>Brief in Support of Appeal, Docket No. 10</u>, at pp. 35-42 of 104 (citing <u>State v. Davidson</u>, 351 N.W.2d 8 (Minn. 1984))[5]; at pp. 43-44 (citing <u>Rules 401 and 403, Minnesota Rules of Evidence</u>); and at pp. 45-46 (citing <u>Rules 801(c), 802-804, 403 and 404(a)(1), Minnesota Rules of Evidence</u>). Since Underdahl had not objected to the evidence at Trial, the Court of Appeals reviewed its admission for plain error, and determined that, under Minnesota law, the evidence was neither inadmissible, nor unfairly prejudicial. See, <u>State v. Underdahl</u>, supra at *11. Accordingly, as Underdahl did not present any argument to the State Courts that was based upon Federal constitutional law, to challenge the admission of that evidence, he failed to "fairly present" any Federal ground, upon

---

[5]Although Underdahl has cited to <u>Old Chief v. United States</u>, 519 U.S. 172 (1997), that case was based upon the Federal Rules of Evidence, not on State Rules, or on Federal constitutional law, and therefore, the decision is inapposite here. In addition, Underdahl has not argued, and our review does not reveal, that the Minnesota Courts' decisions would be contrary to the holding in <u>Old Chief</u>, that it was unfairly prejudicial to admit the identity of the prior conviction, which was not done at Underdahl's Trial.

which Habeas relief could be based.

Therefore, since Underdahl has failed to argue that any Federal right was violated by the State decision, and since he has not exhausted any Federal constitutional basis for Ground One, when he failed to raise any issue of Federal law in the State Court proceedings, we find that Ground One is procedurally defaulted, and that the alleged error is unreviewable. See, <u>Duncan v. Henry</u>, supra at 366 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in Federal Court, but in state court."); see also, <u>Jones v. Jerrison</u>, 20 F.3d. 849, 854 (8th Cir. 1994)("The federal legal theory or theories must plainly appear on the face of the petitioner's state-court briefs.").

Further, since Underdahl has failed to demonstrate cause for not having raised any Federal law argument in the State Court proceedings, nor provided evidence of actual innocence, we find that he cannot overcome the procedural bar. See, <u>Coleman v. Thompson</u>, supra at 753 ("'[C]ause' under the cause and prejudice test is something **external** to the petitioner, something that cannot fairly be attributed to him * * *[;] [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available * * *  or that some interference by officials made compliance

impracticable")[emphasis in original], quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); see also, <u>Brownlow v. Groose</u>, supra at 999.  Accordingly, we recommend denial of Ground One of Underdahl's Habeas Corpus Petition.[6]

Even if we were to address the merits of Underdahl's inadmissible-evidence claim, we would recommend its dismissal.  It has long been settled that "'federal habeas corpus relief does not lie for errors of state law' * * * [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  <u>Estelle v. McGuire</u>, supra at 67-68 (citations omitted); <u>Lannert v. Jones</u>, 321 F.3d 747, 752 n.3 (8th Cir. 2003), cert. denied, 540 U.S. 917 (2003).  Generally, a State Court's evidentiary rulings do not implicate Federal constitutional rights such as would give rise to a Federal Habeas claim.  See, <u>Sera v. Norris</u>, 400

---

[6]Since we find that Underdahl failed to properly exhaust Ground One, by failing to fairly present his Federal claim in State Court, we would normally find that the entire Petition should be dismissed.  See, <u>Rose v. Lundy</u>, 455 U.S. 509, 522 (1982)(requiring Habeas Petitioners to fully exhaust all claims, and determining that a mixed Petition must be dismissed in its entirety).  However, due to the time constraints mandated by the AEDPA, it is our Circuit's practice to allow Petitioners to amend a mixed Petition, so as to include only exhausted claims, where they would be time-barred if dismissed, as they would be here.  See, <u>Underdahl v. Carlson</u>, 381 F.3d 740, 744 (8th Cir. 2004), citing <u>Jackson v. Dormire</u>, 180 F.3d 919, 920 (8th Cir. 1999); see also, <u>Rudduck v. Hilleran</u>, 2010 WL 605729 at *3 (D. Minn., February 10, 2010).  Here, because we find that none of the Grounds raised by Underdahl entitle him to the relief sought, we do not recommend permitting amendment of the Petition to include only exhausted claims, and we address the merits of each asserted Ground.

F.3d 538, 547 n. 8 (8th Cir. 2005), cert. denied, 546 U.S. 915 (2005), citing <u>Weston v.</u>
<u>Dormire</u>, 272 F.3d 1109, 1113 (8th Cir. 2001); see also, <u>Nebinger v. Ault</u>, 208 F.3d
695, 697 (8th Cir. 2000).

Since questions concerning the admissibility of evidence are matters of State
law, they are reviewable in Federal Habeas proceedings "only when the alleged error
infringes upon a specific constitutional protection or is so prejudicial that it amounts
to a denial of due process." <u>Manning-El v. Wyrick</u>, 738 F.2d 321, 322 (8th Cir. 1984),
cert. denied, 469 U.S. 919 (1984), citing <u>Wallace v. Lockhart</u>, 701 F.2d 719, 724 (8th
Cir. 1983), cert. denied, 464 U.S. 934 (1983); see also, <u>Davidson v. Bowersox</u>, 288
F.3d 1076, 1078-79 (8th Cir. 2002), cert. denied, 537 U.S. 925 (2002). On the Record
before us, particularly in light of the testimony of S.T., that Underdahl sold him the
firearm with which Underdahl was charged with illegally possessing, and where the
Trial Court properly instructed the Jury, that evidence of Underdahl's prior felony was
not to be considered in deciding whether he had committed the conduct alleged in the
criminal Complaint, we are unable to find that the admission of the allegedly
inadmissible evidence was so prejudicial as to constitute a denial of due process, even
if the issue were properly before us.

b.    <u>Ground Two: Unitary Trial</u>.  In its Opinion, the Minnesota

Court of Appeals related Underdahl's argument, that the District Court had applied the wrong standard in determining whether to bifurcate the trial and, according to Underdahl, the Court should have followed Rule 11.04, Minnesota Rules of Criminal Procedure, rather than Minnesota Statutes Section 244.10, Subdivision 5.  See, <u>State v. Underdahl</u>, supra at *7.  After the United States Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Minnesota Legislature amended Section 244.10, in order to allow for bifurcated Trials where the prosecution seeks to prove aggravating factors.  See, <u>State v. Underdahl</u>, supra at *7.  After amendment, which became effective on October 1, 2006, the Rule also provides for bifurcated Trials where aggravating factors will be tried.[7]  <u>Id.</u> at *8.  The Court of Appeals concluded that the Rule did not apply to Underdahl's Trial, because of his arrest date and the effective date of the Rule's amendment, and therefore, determined that the Trial Court did not err in applying the Statute.  <u>Id.</u> at *8-9.  The Minnesota Court of

---

[7]The difference between the Minnesota Statute, and the Minnesota Rule of Criminal Procedure, is significant, for the statute allows a Trial Court to bifurcate the sentencing and guilt phases, when the sentencing evidence would be inadmissible in the guilt phase, **and** when its admission would be unfairly prejudicial.  The Rule provides that the Trial Court shall order a bifurcated Trial if the sentencing evidence would otherwise be inadmissible **or** if its admission would be unfairly prejudicial in the guilt phase. See, <u>Minnesota Statutes §244.10, Subdivision 5(c) (2005)</u> (in effect at the time of Trial); <u>Rule 11.04, Minnesota Rules of Criminal Procedure</u>; <u>State v. Underdahl</u>, supra at *7-8.

Appeals went on to determine, as well, that the Trial Court had not erred in proceeding with a unitary Trial, under the standards set forth in the Minnesota Statute.  Id. at *9-11.

As is apparent, in spite of his mention of Blakely v. Washington, supra, in which the Supreme Court held that all aggravating sentencing factors must be proven to a Jury, beyond a reasonable doubt, Underdahl did not present any argument, that was based upon Federal law, to the State Court in support of his challenge to the unitary Trial.  As a result, he has also failed to exhaust Ground Two, and we recommend dismissal of that Ground on that basis.

Even if we were to consider the merits of Underdahl's argument, we would recommend its dismissal.  In Underdahl's brief in support of the Habeas Petition, he argues that the unitary Trial improperly allowed evidence, which related to the four (4) aggravating factors, to influence the Jury in its determination of Underdahl's guilt. Specifically, Underdahl contends that evidence, which was introduced to demonstrate the four (4) aggravated sentencing factors, was unfairly prejudicial to the substantive elements of the charged crime.[8]  His brief in support of his Petition also reiterates his

_____

[8]The four (4) aggravating factors, which were identified during Underdahl's Trial, included "that Underdahl: (1) committed the offense within two weeks of being released from prison, (2) sold the firearm to another, (3) lied to the police, and (4)

argument, that the Trial Court should have applied the Minnesota Rule, rather than the Minnesota Statute, in deciding to order a unitary Trial. Most importantly, Underdahl does not argue, in his brief, that the unitary Trial, or the State Appellate Court's decision to uphold the unitary Trial, was contrary to any established Federal law. See, Brief in Support of Petition, supra at pp. 48-51.

Since Underdahl has not presented to us, any United States Supreme Court authority that would have required the Minnesota Court of Appeals to decide the issues in Ground Two differently, and our independent research reveals no such authority, we are unable to find that the Minnesota State Court's decision, that a unitary Trial was proper, was contrary to clearly established Federal law. See, Spencer v. Texas, 385 U.S. 554, 568 (1967)("Two-part jury trials * * * have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure."), reaffirmed, Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983)("[T]he Due Process Clause does not permit the federal courts to engage in a

_____

falsely shifted blame to another." State v. Underdahl, supra at *3. The Minnesota Court of Appeals determined that the four (4) aggravated sentencing factors were not properly considered by the Trial Court as aggravating factors. Id. at *3-7. However, the Minnesota Court of Appeals also found that the evidence, which was admitted to prove those factors, was otherwise admissible in the guilt phase, and therefore, that the Trial Court did not err in ordering a unitary Trial. Id. at *9-11.

finely-tuned review of the wisdom of state evidentiary rules[.]"); see also, <u>Hatfield v. Daugherty</u>, 837 F. Supp. 852, 854 (E.D. Ky. 1993)("It is well established that there is no constitutional right under the Due Process clause, as made applicable to the states by the Fourteenth Amendment, to a bifurcated trial on the issues of guilt and penalty."), aff'd, 25 F.3d 1048 (6th Cir. 1994), and cert. denied, 513 U.S. 1021 (1994); <u>Cook v. Scribner</u>, 2007 WL 3232275 at *5 (N.D. Cal., October 31, 2007).

In addition, since Underdahl has not demonstrated -- and our review does not reveal -- that the Minnesota Court's decision is an unreasonable application of Federal law, we find no justification for Habeas relief on that ground. Finally, as noted, absent circumstances that are not presented here, we may not evaluate a State Court's decision on State law in a Habeas Corpus action. See, <u>Manning-El v. Wyrick</u>, supra at 322, citing <u>Wallace v. Lockhart</u>, supra at 724; see also, <u>Davidson v. Bowersox</u>, supra at 1078-79. As a consequence, finding no merit to Underdahl's Ground Two, and concluding that he has failed to exhaust any Federal basis for that Ground, we recommend its dismissal.

c.     <u>Ground Three: Prosecutorial Misconduct</u>.     Underdahl contends that the prosecutor committed misconduct by "continually attempt[ing] to bias the trial court, attacking Underdahl personally throughout the proceedings and

improperly appealing to the trial court's prejudices at sentencing."  See, <u>Brief in Support of Petition</u>, supra at p. 54 of 94.  Specifically, Underdahl contends that the prosecutor made remarks -- outside the presence of the Jury -- to the effect that Underdahl had a "tactic" of attacking the integrity of the attorneys representing him, in order to create issues for appeal, and specifically, referencing prior Trials in which the prosecutor had been involved with Underdahl.  <u>Id.</u> at pp. 55-58 of 94.  Underdahl further asserts that the prosecutor included inflammatory statements in his sentencing memorandum -- that Underdahl would wage a "campaign of terror" if not incarcerated for a significant period of time -- and improperly attached the written statement of a fellow inmate, to the effect that Underdahl was mentally unstable, and wished to retaliate against the Sheriff's Office, and local Court officials.  <u>Id.</u> at p. 58.

We will reverse a conviction for prosecutorial misconduct only if "(1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him a fair trial."  <u>United States v. Ziesman</u>, 409 F.3d 941, 953 (8th Cir. 2005), cert. denied, 546 U.S. 990 (2005), quoting <u>United States v. Beckman</u>, 222 F.3d 512, 526 (8th Cir. 2000).  "If we reach the second step, we consider '(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any

curative actions taken by the trial court.'" <u>United States v. Londondio</u>, 420 F.3d 777, 787 (8th Cir. 2005), quoting <u>United States v. Ziesman</u>, supra at 953, quoting, in turn, <u>United States v. Beckman</u>, supra at 526.

As a result, a Habeas petitioner "bears the heavy burden of showing that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." <u>Mack v. Casper</u>, 92 F.3d 637, 643 (8th Cir. 1996), cert. denied, 520 U.S. 1109 (1997), quoting <u>Jones v. Jones</u>, 938 F.2d 838, 844-45 (8th Cir. 1991); see also, <u>Moore v. Wyrick</u>, 760 F.2d 884, 886 (8th Cir. 1985); <u>Roberts v. Bowersox</u>, 137 F.3d 1062, 1066 (8th Cir. 1998)(prosecutorial misconduct does not merit Habeas Corpus relief unless the prosecutor committed an error that effectively eliminated the defendant's Due Process right to a fair Trial), cert. denied, 525 U.S. 1073 (1999), citing <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

Assuming, for the sake of argument, that the prosecutor's statements were misconduct, Underdahl has failed to demonstrate any prejudice resulting from the statements. In his brief to the Minnesota Court of Appeals, Underdahl argued that the prosecutor's alleged misconduct denied him his Due Process rights under the

Fourteenth Amendment,[9] and deprived him of an asserted Sixth Amendment right to an impartial Judge. See, <u>Gaskins v. McKellar</u>, 916 F.2d 941, 947 (4th Cir. 1990), cert. denied, 500 U.S. 961 (1991); see also, <u>In re Murchinson</u>, 349 U.S. 133, 136 (1955)(a defendant is entitled to a fair trial under the Due Process Clause).

Underdahl reiterates his State Court arguments here, and argues that the prosecutor's alleged misconduct prejudiced him, because the Trial Court "imposed a double durational departure" or, in other words, that the Trial Court imposed a greater sentence than it otherwise would have, absent the prosecutor's improper statements. <u>Id.</u> at p. 60. However, the Minnesota Court of Appeals reversed the sentence which, Underdahl argues, demonstrated prejudice to him, and remanded for "imposition of the presumptive guidelines sentence," based upon its determination that the aggravating factors were not properly considered. See, <u>State v. Underdahl</u>, supra at *3-7. As a consequence, the prosecutor's statements had no effect on Underdahl's

---

[9]Underdahl's brief to the Minnesota Court of Appeals, and his brief here, cites to the Fourteenth and the Fifth Amendment Due Process Clauses, see, <u>United States Constitution</u>, <u>Amendments V and XIV</u>. The Fifth Amendment Due Process Clause applies only to the conduct of Federal actors. See, <u>Folkers v. City of Waterloo, Iowa</u>, 582 F. Supp.2d 1141, 1151 (N.D. Iowa 2008), citing <u>Dusenbery v. United States</u>, 534 U.S. 161, 167 (2002) and <u>Warren v. Government Nat. Mort. Ass'n</u>, 611 F.2d 1229, 1232 (8th Cir. 1980), cert. denied, 449 U.S. 847 (1980). Since Underdahl attacks the conduct of a State prosecutor, in a State proceeding, his Due Process rights arise only under the Fourteenth Amendment.

ultimate sentence, and cannot be the basis for Habeas Corpus relief. See, e.g., Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)(a "trial error," such as a prosecutor's improper argument, that negative inferences could be drawn from a defendant's silence, is harmless where it does not have a "substantial or injurious effect or influence" on the Verdict); Gauntlett v. Kelley, 658 F. Supp. 1483, 1498 and 1501 (W.D. Mich. 1987)(a petitioner must show that the he was prejudiced by claimed prosecutorial misconduct, and finding no prejudice where the petitioner received "a new sentencing proceeding before a fair and impartial sentencer," and thus, there was "no remedy [the] Court could impose that petitioner ha[d] not already received.")

While we recognize that a defendant has a Due Process right to an impartial Judge and Jury, see, Gaskins v. McKellar, supra, Underdahl does not allege that the prosecutor made improper statements in the presence of the Jury, nor that the prosecutor's statements had any effect on the manner in which the Judge conducted the Trial, in spite of his claim that the prosecutor intended to create judicial bias, and so, he has not demonstrated that the prosecutor's statements "effectively eliminated [his] Due Process right to a fair Trial." See, Malik v. Khoenan, 1996 WL 137478 at *3 (S.D. N.Y., March 26, 1996)(A petitioner cannot "base a claim of judicial bias on adverse (or even incorrect) rulings without evidence of 'such a high degree of

favoritism or antagonism as to make fair judgment impossible.'"), quoting <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994); see also, <u>United States v. Anderson</u>, 433 F.2d 856, 860 (8th Cir. 1970)(same); cf., <u>Williams v. Beck</u>, 2009 WL 4114709 at * (W.D. N.C., November 23, 2009), quoting <u>Tumey v. Ohio</u>, 273 U.S. 510, 532 (1927)("[I]t certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against [the defendant] in his case,'" but a Judge need not recuse herself where there is merely an appearance of bias). Accordingly, finding no merit to Underdahl's prosecutorial misconduct argument, we recommend its dismissal.

Additionally, in his Reply to the Respondent's Answer to the Petition, Underdahl also appears to argue that the Prosecutor presented false testimony at Trial, by allowing S.T. and J.A. to testify that Underdahl had possessed the pistol. See, <u>Docket No. 14</u> at p. 1 of 11 ("With the respondent's modus operandi being * * * solicitation of perjury, subornation of perjury * * *."). However, Underdahl did not raise that claim in his direct appeals to the Minnesota Courts, and therefore, we do not consider the unexhausted claim. See, <u>Title 28 U.S.C. §2254(b)</u>; <u>O'Sullivan v.</u>

Boerckel, supra at 842;  McCall v. Benson, supra at 757.

        d.       Ground Four: Denial of Counsel at Post-Trial Motion for New Trial.  In Ground Four, Underdahl contends that his Sixth Amendment right to counsel was violated when the Trial Court denied his request that he be appointed an attorney on his Motion for a New Trial, and Underdahl raised that claim in the Minnesota Court of Appeals.  In its decision, the Court of Appeals recognized that the Sixth Amendment of the Federal Constitution affords criminal defendants the right to be represented by counsel, but that the right can be waived, "if the waiver is competently and intelligently made."  State v. Underdahl, supra at *12, citing Amendment VI, United States Constitution and Minnesota v. Worthy, 583 N.W.2d. 270, 275 (Minn. 1978), citing, in turn, Johnson v. Zerbst, 304 U.S. 458 (1938).  On the Record before it, the Court of Appeals concluded that the Trial Court committed no error in finding a waiver, based upon Underdahl's understanding of the circumstances and consequences, his repeated firing of his attorneys, and his delay in seeking counsel for that post-Trial Motion.  Id.  While it is not entirely clear from his brief, Underdahl appears to argue that the Minnesota Court of Appeals' conclusion, that he had waived his right to counsel, was incorrect because he was clear in indicating that he wanted to have counsel represent him at the Hearing on his Motion

for a New Trial.

While the Minnesota Courts framed the issue as one of waiver, in practical effect, the Courts found that, by failing to respond to the clear directives of the Trial Court to obtain counsel, and by seeking to delay the proceedings, Underdahl forfeited any right, that he might otherwise have had to counsel, at his Motion Hearing.  See, Wilkerson v. Klem, 412 F.3d 449 (3rd Cir. 2005), cert. denied, 547 U.S. 1051 (2006); United States v. Goldberg, 67 F.3d 1092, 1099-1100 (3rd Cir. 1995)(discussing the difference between waiver, waiver by conduct, and forfeiture).   The Supreme Court has never directly ruled on whether a defendant can waive, or forfeit, his Sixth Amendment right to counsel through dilatory conduct, although it has ruled that a defendant may forfeit his Sixth Amendment right for counsel to be present at Trial through that defendant's disruptive conduct.  See, Illinois v. Allen, 397 U.S. 337, 343 (1970); see also, Taylor v. United States, 414 U.S. 17 (1973)(finding that the Trial Court properly conducted the Trial after the defendant had voluntarily failed to return from a recess).

Therefore, absent Supreme Court authority on point, we find that the Minnesota Courts' decision was not contrary to Federal law.  See, Thomas v. Carroll, 581 F.3d 118, 124 (3rd Cir. 2009)(finding a State Court decision was not contrary to Supreme

Court precedent, because "[t]he Supreme Court ha[d] never faced the precise issue presented by th[e] case."), citing <u>Williams v. Taylor</u>, supra at 405-06; <u>Stenson v. Lambert</u>, 504 F.3d 873, 881 (9th Cir. 2007)("Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law."), cert. denied, --- U.S. ---, 129 S.Ct. 247 (2008). Accordingly, we turn to consider whether the State Courts' conclusion was an unreasonable application of Federal law, which was clearly established. See, <u>Gilchrist v. O'Keefe</u>, 260 F.3d 87, 94-95 (2nd Cir. 2001)(examining the State Courts' decision for "an unreasonable application of general Supreme Court precedent * * * establishing that the right [to] counsel is a fundamental one."), cert. denied, 535 U.S. 1064 (2002). We conclude that the State Courts did not unreasonably apply clearly established Federal law.

At the Sentencing Hearing, which was held on December 13, 2006, after it became clear that Underdahl's hired attorney would not be handling the Motion for a New Trial, which Underdahl had filed <u>pro se</u>, but while represented by an attorney, in addition to the <u>pro se</u> pre-Trial Motion, which Underdahl had filed while he was represented, the Trial Court instructed Underdahl to file a formal written application

for a Public Defender, with the Court Administrator, if he wished to have counsel appointed. See, <u>Order, Case No. 60-CR-06-5343, Docket No. 7, Exhibit 3</u>, at pp. 32 of 60. Underdahl did not do so, but instead, chose to file a self-styled "Appointment of Counsel Request." See, <u>Register of Actions</u>, supra at p. 55 of 60. In its written Order, the Trial Court again instructed Underdahl to file a formal written application with the Court Administrator, or to contact the State Public Defender's Office, for which the Court provided both an address and a telephone number, specified that it did not consider the self-styled request to be effective in light of the previous instructions, and warned Underdahl that he would need to argue his Motion himself if he failed to take the proper steps to secure counsel. See, <u>Order, Case No. 60-CR-06-5343, Docket No. 7, Exhibit 3</u>, at p. 32 of 60.

In spite of those very clear directives, Underdahl did not apply for a public defender until January 16, 2007 -- the date of the Hearing on his Motion. <u>Id.</u>; <u>Order Denying Defendant's Motion for New Trial, Answer, Docket No. 7, Exhibit 2</u>, at p. 20 of 60. Stated differently, during the more than thirty (30) day period between the Sentencing Hearing and the Motion Hearing, Underdahl did not find private counsel, and did not file an application for a Public Defender, as he had twice been instructed to do, until the date of the Hearing. The Trial Court found that the Plaintiff had

delayed in seeking counsel, had attempted to use his lack of counsel to delay the proceedings, and refused to take action with full knowledge of the consequences, thereby forfeiting his right to counsel at the Motion Hearing. The Minnesota Court of Appeals upheld that conclusion, and found no abuse of discretion.

Based upon the Record before us, with due consideration of the limitations imposed by Congress on our review in a Habeas Corpus action, and given the Supreme Court precedent in <u>Illinois v. Allen</u>, supra, and <u>Taylor v. United States</u>, supra, that a defendant may forfeit constitutional rights when he attempts to frustrate the adjudication of his case through disruption or non-participation, we find that the Minnesota Courts did not unreasonably apply Federal law in concluding that Underdahl had forfeited whatever right to counsel he might have had for his post-Trial Motion.[10] As the Eighth Circuit has previously held, the right to counsel "is a shield,

---

[10]The Respondent urges us to conclude that defendants have no Sixth Amendment right to counsel at a post-Trial, pre-appeal Hearing on a Motion for New Trial. While we find the question intriguing, and agree with the Respondent that there is no clear Supreme Court precedent on the issue, we find it unnecessary to resolve, as we have concluded that the Minnesota Courts neither acted contrary to Federal law, nor did they unreasonably apply Federal law, when they determined that Underdahl had forfeited whatever right to counsel he had for his Motion for a New Trial by his dilatory conduct. Our conclusion is further supported by the fact that the forfeiture of counsel at the post-Trial, pre-appeal stage does not "'deal as serious a blow to a defendant as would the forfeiture of counsel at the trial itself.'" <u>Gilchrist v. O'Keefe</u>, 260 F.3d 87, 99 (2nd Cir. 2001), cert. denied, 535 U.S. 1064 (2002) quoting <u>United</u>

not a sword," and a "defendant has no right to manipulate his right for the purpose of delaying and disrupting the trial," or any other proceeding. <u>United States v. Stewart</u>, 20 F.3d 911, 917 (8th Cir. 1994)(affirming the Trial Court's denial of a request for counsel, where the defendant had previously waived that right, with due warnings from the Court of the risks, and where the defendant appeared to be attempting to delay the proceedings), quoting <u>Meyer v. Sargent</u>, 854 F.2d 1110, 1113 (8th Cir. 1988), quoting, in turn, <u>United States v. White</u>, 529 F.2d 1390, 1393 (8th Cir. 1976); see also, <u>Wilkerson v. Klem</u>, supra at 456 (affirming the denial of a Habeas Corpus Petition where the defendant had discharged appointed counsel one (1) month before Trial, was informed by the Court that he must obtain counsel, or apply for a Public Defender before the Trial date, and the defendant failed to do so, holding that "certain obstructive conduct by a defendant may constitute a forfeiture of Sixth Amendment protections."); <u>Gilchrist v. O'Keefe</u>, supra at 89 and 99 n. 8 ("[H]ad this been a direct appeal from a federal conviction we might well have agreed with petitioner that the constitutional interests protected by the right to counsel prohibit a finding that a defendant forfeits that right based on a single incident, where there are no warnings

---

<u>States v. Leggett</u>, 162 F.3d 237, 251 n. 14 (3rd Cir. 1998), cert. denied, 528 U.S. 868 (1998).

that a loss of counsel could result from such misbehavior, where there was no evidence that such action was taken to manipulate the court or delay proceedings, and where it was possible that other measures short of outright denial of counsel could have been taken to protect the safety of counsel," and noting that "[s]cenarios * * * that are suggestive of an attempt to manipulate the court would seem to present a stronger case for a finding of forfeiture."); United States v. Martin, 311 Fed.Appx., 517, 520 n. 2 (3rd Cir., May 28, 2008)(finding that, even if the defendant had not affirmatively invoked his right to proceed pro se, he had likely forfeited his right to counsel, because "his inability to get along with his attorneys appeared to be part of an overarching strategy of perpetual delay.").

     e.     <u>Ground Eight: Insufficient Evidence to Support Conviction</u>. Underdahl argues that the evidence against him was insufficient for a conviction, because the two (2) witnesses, who testified at Trial as to his possession of the .22 caliber pistol, were not credible, and the allegedly withheld evidence of additional animal traps would have proved that they were untruthful. Underdahl raised this claim in his supplemental pro se brief to the Minnesota Court of Appeals, and the Court determined that issues of credibility were for the Jury, and that the Jury had plainly credited the witnesses' testimony. See, <u>State v. Underdahl</u>, supra at *13. As

noted, to obtain Habeas relief for an unreasonable determination of the facts, Underdahl must rebut the factual findings of the State Court by producing clear and convincing evidence to the contrary. See, Title 28 U.S.C. §2254(e)(1); Guinn v. Kemna, supra at 359; Lupien v. Clarke, supra at 618; Green v. Norris, supra at 1029.

Here, Underdahl contends that the assertedly missing animal traps would have proven that all of the money, that he had received from S.T., was for animal traps, and that, therefore, he did not sell S.T. the pistol in question, and S.T.'s testimony to that effect was false. We find that Underdahl's attacks on the credibility of the Trial witnesses cannot demonstrate, by clear and convincing evidence, that the factual finding, that he possessed the offending pistol, was incorrect, in light of our extremely limited review of witness credibility in Habeas actions. See, Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004)("Federal habeas review 'gives federal courts no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'"), cert. denied, 543 U.S. 1022 (2004), quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983).

Further, we cannot conclude that the alleged existence of extra traps constitutes clear and convincing evidence that the Jury's finding, that Underdahl had possessed the pistol, was erroneous. As the Trial Court observed in its opinion denying

Underdahl's Motion for a New Trial:

> [Underdahl] contends that the existence of additional traps shows that [S.T.] gave him money for more traps and not a pistol, and therefore he did not sell a pistol (as prohibited by the statute). However, [Underdahl] fails to recognize that [S.T.] testified under oath that [Underdahl] sold him a .22 caliber pistol. [J.A.] also testified under oath that he saw [Underdahl] pick up the pistol. "We assume that the jury believed the witnesses whose testimony supports the verdict and that the jury did not believe evidence to the contradictory." State v. Voorhees, 596 N.W.2d 241, 252 (Minn. 1999). There was an overwhelming amount of incriminating direct and circumstantial evidence offered against [Underdahl] at trial.

Order Denying Motion for Retrial, Docket No. 7, at p. 27 of 60.

In addition to the testimony of S.T. and J.A., the Record discloses that the prosecution introduced evidence of the pistol itself, and of recordings of Underdahl's dealings with S.T., including a videorecording of Underdal's "actual sale of the pistol to [S.T.]", as well as Underdahl's own videotaped statement to the police that he had been seen giving the pistol to someone. Id. at p. 21 of 60.

"In the final analysis, '[w]e reverse the jury's verdict for insufficient evidence "only if no reasonable jury could have found [the Petitioner] guilty beyond a reasonable doubt."'" Begordis v. Fabian, 2007 WL 737781 at *12 (D. Minn., March 8, 2007), quoting United States v. Jourdain, 433 F.3d 652, 655 (8th Cir. 2006), cert.

denied, 547 U.S. 1139 (2006), quoting, in turn, <u>United States v. Henderson-Durand</u>, 985 F.3d 970, 975 (8th Cir. 1993), cert. denied, <u>sub</u> <u>nom., Arnold v. United States</u>, 510 U.S. 856 (1993).  Applying that standard, given the Record presented, Underdahl's insistence that the additional animal traps show that the Jury's Verdict was incorrect fails as a matter of law, and we conclude that he has failed to present clear and convincing evidence to contradict the factual findings at Trial.  Accordingly, we recommend the dismissal of the Petition on Ground Eight.

In sum, finding no merit to any of Underdahl's claims, we recommend that his Petition for Habeas relief be dismissed with prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed with prejudice.


Dated: May 3, 2010                              s/Raymond L. Erickson
                                                Raymond L. Erickson
                                                CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than May 17, 2010,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than May 17, 2010,** unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.