UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gary Lynn Underdahl,                                  Civ. No. 09-1843 (PAM/RLE)

           Petitioner,

v.                                                        **MEMORANDUM AND ORDER**

State of Minnesota,

           Respondent.

---

This matter is before the Court on the Report and Recommendation ("R&R") of Chief Magistrate Judge Raymond L. Erickson, dated May 3, 2010. After a thorough analysis of Petitioner Gary Lynn Underdahl's Petition for Writ of Habeas Corpus, the R&R recommended the Petition be dismissed with prejudice. Underdahl filed timely objections to the R&R on May 14, 2010. Underdahl's objections were general in nature, and largely rested on the arguments made at prior stages of the case. According to statute, the Court must conduct a de novo review of any portion of the Magistrate Judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Given the general nature of Underdahl's objection, the Court cannot respond to any specific argument. Nonetheless, the Court has performed a thorough review and, for the following reasons, adopts the R&R.

**BACKGROUND**

Underdahl is a Minnesota state prisoner currently incarcerated at the Moose Lake Facility. He brings this Petition to challenge his state court conviction for possession of a

firearm. Underdahl was prohibited from possession a firearm after being convicted of several "crime[s] of violence" in the 1990s. State v. Underdahl, No. A07-1454, 2008 WL 2965324, at * 1 (Minn. Ct. App. Aug. 5, 2008).

At his trial, evidence showed that when Underdahl was released from prison in 2006, he went to stay with his mother. While cleaning out a shed on his mother's property, Underdahl found a "rusty but operable .22 caliber pistol." Id. At the trial, J.A. testified that Underdahl handed him the gun and told him to hide it in a specific location. Id. J.A. complied with Underdahl's request, but then reported the incident to his probation officer. Id. Shortly thereafter, S.T. bought the gun from Underdahl. Id. The discussion between S.T. and Underdahl was recorded. Id. at *1 n.1. However, there is little audio from Underdahl on the tapes because he "was under the impression that [corrections agents] could listen in on his [supervised release] monitoring device." Id. Underdahl was arrested and he admitted during the police interview that he had found the gun, but denied having touched or sold it. Id. at *2.

**ANALYSIS**

    1.    Right to Counsel

First, Underdahl asks the Court to appoint counsel to represent him for the purpose of this habeas petition. (Petr.'s Br. (Docket No. 2) at 7; Petr.'s Obj. to R&R (Docket No. 17) at 2.) No constitutional right to counsel exists in habeas corpus actions. Pennsylvania v. Finley, 481 U.S. 551 (1987); Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994). Rather, "[a] district court may appoint counsel for a habeas petitioner when 'the interests of justice

so require.'" Hoggard, 29 F.3d at 471. The Court finds that the issues posed by this case are not legally or factually complex, and the case has been adequately briefed such that the Court can make a decision based on the record before it. Thus, the interests of justice do not require the appointment of counsel. Underdahl's request is denied.

2.  Habeas Corpus Petition

The Court may not grant a state prisoner's application for writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless the decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

Under the first option, a state court's decision is contrary to clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that decision]." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision is an unreasonable application of clearly established law if it correctly identifies the legal rule but unreasonably applies the facts. Id. at 407-408.

Under the second option, the factual findings of the state court can be challenged, but they are subject to a very deferential review. Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001) The factual findings of the state court are presumed correct, and that presumption is rebutted only by clear and convincing evidence. Id.; 28 U.S.C. § 2254(e)(1).

Finally, the Court cannot entertain claims from state court petitioners unless the petitioner has thoroughly exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). A claim is "procedurally defaulted" if it is not "fairly presented in state court before [arising] in federal court." Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005) (citation omitted). A claim is fairly presented if during the state proceedings the petitioner refers to "a specific constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Id. (quoting Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir. 1999)). Presenting a state claim that is merely similar to the claim raised in the federal habeas petition is not sufficient. Id.

### A. Inadmissable Evidence

Underdahl argues that he is entitled to habeas relief because the trial court admitted evidence that he claims was inadmissible, inflammatory, and prejudicial. However, Underdahl has not identified any federal law that was violated by the admission of the evidence. At the state court level, his briefs claimed that the admitted evidence was contrary to state law and the Minnesota Rules of Evidence. (Petr.'s Br. at 20.) Violations of state law alone are not sufficient to raise a habeas claim; Underdahl must allege violations of clearly established federal law. 28 U.S.C. § 2254(d)(1). As such, he has not stated a cognizable habeas claim. In addition, because Underdahl did not assert violations of federal law at the state level, he has not exhausted those claims. Cox, 398 F.3d at 1031. This claim is dismissed.

### B. Unitary Trial

In ground two of his petition, Underdahl claims habeas relief on the grounds that the trial court failed to bifurcate his trial. Underdahl claims that the jury was prejudiced by hearing the aggravating factors evidence at the same time as the guilt evidence. At the state level, Underdahl relied again on state law for his arguments, arguing that the trial court should have applied Minnesota Rule of Criminal Procedure 11.04. By failing to raise any federal claims, Underdahl did not exhaust any federal law claims he might have. Furthermore, even if he were not procedurally barred, Underdahl does not appear to have a federal right to a bifurcated trial. Spencer v. Texas, 385 U.S. 554, 568 (1967). Thus, this claim is also dismissed.

### C. Prosecutorial Misconduct

Underdahl claims that the prosecutor engaged in misconduct that resulted in a violation of his Sixth Amendment right to an impartial judge and his Fourteenth Amendment due process rights. More specifically, he alleges that the prosecutor purposefully attempted to prejudice the trial court outside the presence of the jury.

The Eighth Circuit has a two-part test for reversible prosecutorial misconduct. First, "the prosecutor's remarks or conduct must have been improper." United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000) (citations omitted). Second, the "remarks or conduct must have prejudicially affected [the] defendant's substantial rights so as to deprive him of a fair trial." Id. In determining whether conduct was prejudicial, the court considers several factors: "1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence of the defendant's guilt; and 3) any curative actions taken by the trial court." Id.

(citations omitted). The critical question is whether the remarks or conduct were "so offensive as to deprive the defendant of a fair trial." Id. (citations omitted).

As the R&R explained, even if the Court assumes that the actions of the prosecutor rise to the level of misconduct, Underdahl cannot prove that he was prejudiced by the prosecutor's statements. The jury did not hear the alleged misconduct, so it could not affect their decision at the guilt phase. Second, Underdahl identifies no rulings or actions taken by the trial court which resulted in prejudice during the guilt phase. Finally, because the Court of Appeals overturned the sentence imposed by the judge and mandated a presumptive sentence, Underdahl, 2008 WL 2965324, at * 7, the prosecutor's actions cannot be said to have prejudiced the trial court with regard to the sentence ultimately imposed. As such, Underdahl has not stated a prosecutorial misconduct claim entitling him to habeas relief. This claim is dismissed.

## D. Denial of Counsel at Motion for New Trial

Underdahl argues that he was denied constitutionally guaranteed counsel at his motion for a new trial. Underdahl's relationships with his attorneys were contentious. Underdahl was initially appointed a public defender. Prior to trial, Underdahl fired his public defender, then rehired him before firing him again, and finally decided to obtain private counsel for trial.

After the trial, and while still represented by private counsel, Underdahl filed a pro se motion for a new trial. Private counsel was unwilling to represent Underdahl on the motion. Underdahl asked the trial court to dismiss his private attorney so that he could

6

proceed with his motion.

The Court declined to dismiss Underdahl's private counsel until after the sentencing hearing. After the sentencing, the trial court granted Underdahl's motion to dismiss his private attorney. The court warned Underdahl that the public defender's office would likely decline to represent him and indicated that he was responsible for obtaining counsel before the motion hearing. The court provided explicit instructions to Underdahl on the steps he was to take to try to obtain counsel. Finally, the court warned Underdahl that if he failed to obtain counsel by the hearing date, he would be responsible for representing himself.

During the time between the two hearings, Underdahl failed to follow the court's instructions or to privately retain counsel. Finally, on the day of the hearing, Underdahl contacted the public defender's office pursuant to the Court's instructions, however they declined to represent him. The court concluded that Underdahl had delayed in seeking counsel, was using his lack of counsel as a delay tactic, and because he had refused to obtain counsel despite having knowledge of the consequences, the court determined that he forfeited his right to counsel.

As the R&R demonstrates, federal case law is replete with examples in which similar behavior has resulted in a forfeiture of the right to counsel. "[T]he right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for the purpose of delaying or disrupting the trial." Meyer v. Sargent, 854 F.2d 1110, 113 (8th Cir. 1988) (quoting United States v. White, 529 F.2d 1390, 1393 (8th Cir. 1976)). In similar cases, especially when a defendant has been fully warned of the consequences of failing to contact

7

counsel prior to the hearing, courts have found the defendant to have forfeited counsel. E.g., Wilkerson v. Klem, 412 F.3d 449, 456 (3rd Cir. 2005). Given such precedent, the Court concludes that the state courts did not unreasonably apply federal law. Underdahl is not entitled to habeas relief on this claim.

### E. Withholding Exculpatory Evidence

Underdahl requests habeas relief on the grounds that he was deprived of exculpatory evidence. Underdahl claims that the money he received from S.T. was for animal traps, not for a gun. He claims that he was obstructed from obtaining and using the evidence at trial. Underdahl raised this claim pro se at the state level. Because no legal argument was raised, the Minnesota Court of Appeals concluded that the issue was waived pursuant to State v. Krosch, 642 N.W.2d 713, 719 (Minn. 2002). Underdahl, 2008 WL 2965324, at * 13 n.7.

A claim is not entitled to habeas review where it was barred by a state procedural bar that is "firmly established and regularly followed" and "furthers a legitimate state interest." Barnett v. Roper, 541 F.3d 804, 808 (8th Cir. 2008). As the R&R indicated, the Krosch procedural bar is firmly established and regularly followed. It also furthers a legitimate interest; those who appear before the court must put forth the facts and law that they claim entitle them to relief. It is not the court's role to ferret out all potential theories that could be raised.

A habeas petitioner can overcome a state procedural bar only by meeting "strict cause and prejudice or actual innocence standards." Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004). Underdahl has not provided the Court any indication that he has cause for his

8

default or was prejudiced by it. And although Underdahl disputes the credibility of the state's witnesses, he has not presented evidence of actual innocence.

Underdahl now claims to have a secret witness who would testify that the police attempted to set him up prior to his release in 2006. However, Underdahl is unwilling to release his name. The Court cannot proceed on vague hints and secrets. Evidence must developed and presented for the Court's consideration. But, even if timely raised and sufficiently developed, the evidence described by Underdahl would not establish actual innocence. That a police officer tried to set Underdahl up on a prior occasion would not prove that he did not commit the crime of which he is convicted; the two incidents are not necessarily casually connected.

Ultimately, Underdahl cannot overcome the procedural bar. This claim is dismissed.

### F. Inadequate Representation by Trial Counsel

Underdahl argues that he had inadequate representation. The Minnesota Court of Appeals did not address this claim, finding it also to be procedurally barred Krosch. For the reasons stated above, Underdahl has not met the standards required to assert the barred claim in a habeas petition. Thus, this claim is dismissed.

### G. Failure to Rule on Pro Se Suppression Motion

Underdahl claims that the trial court deprived him of his right to due process by refusing to rule on his pro se motion to suppress evidence of the gun. Underdahl also submitted this issue pro se at the appellate level. Again citing lack of legal argument, the Minnesota Court of Appeals found the claim to be procedurally barred. Again, because

9

Underdahl has not show cause, prejudice, or actual innocence, this claim is not entitled to habeas review. This claim is dismissed.

### H. Insufficient Evidence

Finally, Underdahl asserts that the evidence at trial was insufficient to establish his guilt. Underdahl presented this claim pro se to the state court, arguing that because the witnesses that testified where not credible, there was not sufficient evidence to convict him. Because credibility is a jury issue, and the jury had apparently found the testimony of S.T. and J.A. credible, the Minnesota Court of Appeals concluded that the evidence was "more than sufficient to support the guilty verdict." Underdahl, 2008 WL 2965324, at *13.

The R&R sets forth a well-reasoned analysis of why Underdahl is not entitled to habeas review on his insufficient evidence claim. (R&R at 43-46.) Habeas review is not intended to review the credibility of witnesses. Underdahl's claims regarding the animal trap evidence was rebutted by direct testimony during the trial—testimony that the jury apparently believed. Ultimately, the evidence presented at trial was sufficient to prove the crime of which Underdahl was convicted, and the jury determined that evidence was credible. This claim is also dismissed.

### 3. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253 and the recent amendments to Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial

of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which Underdahl has made a substantial showing of a denial of a constitutional right. Thus, the certificate of appealability is denied.

**CONCLUSION**

Underdahl has no right to appointed counsel on a habeas claim. In addition, the claims are not so complex as to merit the appointment of counsel. In reviewing Underdahl's Petition for Writ of Habeas Corpus, the Court finds no merit in Underdahl's claims and hereby **ADOPTS** the R&R (Docket No. 16).

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Docket No. 1) is **DISMISSED with prejudice**; and

2. Certificate of Appealability is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Thursday, June 3, 2010

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge